United States Bankruptcy Court
Southern District of Texas
FILED
FEB 2 1 2007
Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| CHRISTOPHER HUGHES and | § | |
| BRIAN HAMELINK, | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | |
| JOSEPH H. SAMS, | § | |
| Defendant | § | |

## NOTICE OF REMOVAL

Defendant Joe Sams (hereinafter "Defendant") has been served with a lawsuit commenced in Harris County District Court in the State of Texas. Harris County is within the Southern District of Texas, Houston Division. *See* 28 U.S.C. § 1446(a) (2007) (requiring that defendants seeking removal must file a notice of removal in the "district and division within which such action is pending").

This Court has jurisdiction in the present case as there is complete diversity between the parties and the requested monetary relief exceeds $75,000.00. *See* 28 U.S.C. §1332(a)(1) (2007). There is total diversity between the parties: Plaintiffs Christopher Hughes and Brian Hamelink are residents of and domiciled in North Carolina, as admitted in Plaintiffs' Original Petition filed in the District Court of Harris County Texas. Plaintiffs' Original Petition at ¶¶ 1-2 (hereinafter "Petition"). Defendant is a resident of and domiciled in Minnesota. Petition at ¶ 3. The amount in controversy is greater than $75,000.00 as Plaintiffs have requested a monetary award in excess of $92,758.00. Petition at ¶ 12. "[A] copy of all process, pleadings, and orders served upon such defendant" in this action have been attached hereto in compliance with 28 U.S.C. § 1446(a) (2007). Further, the following has been provided in compliance with S.D. Texas Local Rule 81:

(1) a copy of the docket sheet from the Harris County District Court, (2) a list of all counsel of record including addresses, telephone numbers and parties represented and (3) an index of matters being filed with this Court.

According to the notice received by Defendant, Constable Jack F. Abercia sent the Petition via Certified Mail to Defendant on January 24, 2007. Defendant received an executed service of process on Saturday, January 27, 2007. Defendant is required to file this notice of removal with this Court "within thirty days after the receipt by the defendant, through service." 28 U.S.C. § 1446(b) (2007). Thirty days after Defendant's receipt of this Petition and service concludes on February 26, 2007. In filing this Notice of Removal prior to February 26, 2007, along with Michael D. Schwartz's Motion and Order for Admission *Pro Hac Vice* for Defendant Joe Sams, Defendant has met this requirement.

Issued:   February **16**, 2006

MICHAEL D. SCHWARTZ, P.A.

Michael D. Schwartz (MN #98164)
Joseph J. Walsh (MN #035272X)
455 Pond Promenade, Suite 210
P.O. Box 219
Chanhassen, MN 55317-0219
Telephone:  (952) 937-5655
Facsimile:  (952) 937-5855

## **ACKNOWLEDGMENT**

The undersigned hereby acknowledges that sanctions may be imposed pursuant to Rule 11 of Federal Rules of Civil Procedure.

Dated:   February **16**, 2006

MICHAEL D. SCHWARTZ, P.A.

Michael D. Schwartz (MN #98164)
Joseph J. Walsh (MN #035272X)
455 Pond Promenade, Suite 210
P.O. Box 219
Chanhassen, MN 55317
Telephone:  (952) 937-5655
Facsimile:  (952) 937-5855

## <u>INDEX TO EXHIBITS</u>

1.      Executed Process in the Case

2.      Plaintiffs' Original Petition

3.      Note from Harris County Clerk stating there have been no orders signed in
        this case yet.

4.      The Docket Sheet

5.      List of Counsel of Record

CAUSE NO. 200701460

71 1563 6453 1111 1281 32

RECEIPT  NO. 174947                    65.00         CO1
              01-10-2007                        TR # 72140676

PLAINTIFF: HUGHES, CHRISTOPHER                     In The  61st
    vs.                                            Judicial District Court
DEFENDANT: SAMS, JOSEPH H        $1                of Harris County, Texas
                                                   61ST DISTRICT COURT
                                                   Houston, TX

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: SAMS, JOSEPH H
    4610 EAST LAKE APARTMENT 319   MINNEAPOLIS MN 55406

Attached is a copy of <u>PLAINTIFF'S ORIGINAL PETITION</u>

This instrument was filed on the <u>10th day of January, 2007</u>, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED,  You may employ an attorney.  If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you.

TO OFFICER SERVING:
    This citation was issued on 12th day of January, 2007, under my hand and
seal of said Court.

<u>Issued at request of:</u>                  CHARLES BACARISSE, District Clerk
ABSMEIER, MICHAEL ROBERT                      Harris County, Texas
1100 LOUISIANA #5300                          301 Fannin      Houston, Texas 77002
HOUSTON, TX 77002                             (P.O. Box 4651, Houston, Texas 77201)
Tel: (713) 751-5235
<u>Bar No.:</u> 24050195                      BY
                                              Deputy CHAMBERS, WANDA RENE ULW/VGZ/7742424

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy   of   this   citation   together   with   with   an   attached   copy   of
PLAINTIFF'S VERIFIED ORIGINAL PETITION & APPLICATION FOR INJUNCTIVE RELIEF
to the following addressee at address:

_____          _____
                                           ADDRESS

                                           Service was executed in accordance with Rule 106(a)
_____          (2) TRCP, upon the Defendant as evidenced by the
ADDRESSEE                                   return receipt incorporated herein and attached
                                           hereto at _____

JACK F. ABERCIA, CONSTABLE
PRECINCT NUMBER ONE
HARRIS COUNTY, TEXAS

MAIN OFFICE
  P.O. BOX 52578
  HOUSTON, TEXAS 77052-2578
  (713) 755-5200  FAX (713) 755-8951

ANNEX OFFICE
  7300 NORTH SHEPHERD
  HOUSTON, TEXAS 77091
  (713) 697-3600  FAX (713) 697-3649

## OFFICER'S RETURN FOR CERTIFIED MAIL

Received this CITATION, case #200701460 on the __24TH__ *day* of JANUARY 2007 at 12:50 P.M. Executed at 4610 EAST LAKE APT 319 MINNEAPOLIS, MN 55406 by mailing to the within name *JOSEPH H SAMS* AND by delivering to *JOSEPH SAMS* on the 27TH day of JANUARY 2007 BY REGISTERED/CERTIFIED MAIL WITH DELIVERY RESTRICTED TO ADDRESSEE ONLY, a true copy of this citation together with a copy of PLAINTIFF'S ORIGINAL PETITION

FEE : $65.00

JACK F. ABERCIA, CONSTABLE
PCT #1, HARRIS COUNTY TX

DEPUTY: _____ #1032



**UNITED STATES POSTAL SERVICE™**

Date Produced: 02/05/2007

HARRIS COUNTY CONSTABLE

The following is the delivery information for Certified item number 7115 6364 5311 1112 8132. Our records indicate that this item was delivered on 01/27/2007 at 10:45 a.m. in MINNEAPOLIS, MN, 55406. The scanned image of the recipient information is provided below.

Signature of Recipient:

Delivery Section

*Joseph Sams*

Address of Recipient:

*4610  E  Lake  # 319*

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,

United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service.  It is solely for customer use.

Customer Reference Number: 11112825

*Joseph H. Sams*
*200701460*

ASSESSED

ENTERED _Scott_

VERIFIED _____

Filed
07 January 10 P4:05
Charles Bacarisse
District Clerk
Harris District

CAUSE NO. 2007-10460

| | | |
|---|---|---|
| CHRISTOPHER HUGHES and BRIAN HAMELINK, | § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| | § | HARRIS COUNTY, TEXAS |
| vs. | § § | |
| JOSEPH H. SAMS, | § § | **Jury Demanded** |
| *Defendant.* | § § | 601st JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THIS COURT:

COME NOW PLAINTIFFS CHRISTOPHER HUGHES ("Hughes") and BRIAN HAMELINK ("Hamelink") (collectively "Plaintiffs") and file this their Original Petition against JOSEPH H. SAMS ("Sams"), and in support thereof would show this Court as follows:

### I. Discovery Control Plan

Plaintiffs intend to conduct Level II discovery in this case pursuant to Texas Rule of Civil Procedure 190.3. Plaintiffs demand a **trial by jury**, and hereby tender the requisite fee to the Clerk of this Court.

### II. Parties

1.    Plaintiff Christopher Hughes is a resident of North Carolina.

2.    Plaintiff Brian Hamelink is a resident of North Carolina.

3.    Upon information and belief, Defendant Joseph H. Sams ("Sams") is a resident of Minnesota.  At the time the causes of action asserted herein accrued, Sams was a resident of Texas. Sams may be served by personal service.  Sams may also be served by the Clerk of this Court by mailing a copy of the citation with a petition attached via certified mail, return receipt

EXHIBIT

2

requested and delivery restricted, to his home address of 4610 East Lake, Apartment 319, Minneapolis, Minnesota 55406, or wherever he may be found. *See* TEX. R. CIV. P. 108 ("Where the defendant is absent from the State, or is a nonresident of the State, the form of notice to such defendant of the institution of the suit shall be the same as prescribed for citation to a resident defendant; and such notice may be served by any disinterested person competent to make oath of the fact in the same manner as provided in Rule 106 hereof."). The Clerk is requested to issue a citation for personal service at this time and is further requested to serve Sams by via certified mail, return receipt requested and delivery restricted, at the above address.

### III. Venue

4.     Venue is proper in this Court as Harris County is the county "in which all or a substantial part of the events . . . giving rise to [this] claim occurred." TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1). Further, venue is proper in this Court because Harris County is the county in which the parties have "contracted in writing to perform an obligation," expressly naming Harris County in that writing. TEX. CIV. PRAC. & REM. CODE ANN. § 15.035(a).

### IV. Jurisdiction

5.     Jurisdiction is proper in this Court as the amount in controversy is in excess of the minimal jurisdictional requirements of this Court. Further, this Court has personal jurisdiction over Defendant because Defendant breached a partnership agreement between the above-named parties in Houston, Harris County, Texas. Further, the partnership agreement that is the subject of this dispute was to be performed in whole or in part in Houston, Harris County, Texas. Accordingly, this Court has jurisdiction over Defendant under the Texas "Long Arm" Statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1).

2

### V.  Background

6.     On or about January 28, 1999, Plaintiffs entered into a partnership agreement (the "Partnership Agreement") with Defendant Sams.  *See* Partnership Agreement, attached hereto as Ex. A.  The purpose of the Partnership Agreement was to form a partnership in order to purchase and carry on a printing business.  That partnership was known as BFM Partners ("BFM").

7.     From the inception of the Partnership Agreement, BFM was engaged in the printing business.  Sams acted as the manager of the business and was responsible for the day-to-day operations of BFM.   Although sales initially grew over the first few years, the business ultimately became unprofitable.

8.     In early 2003, Sams left his job as manager of the printing business, but remained a partner in BFM.  BFM continued operations until late 2005, when it ultimately ceased doing business.

9.     Pursuant to the terms of the Partnership Agreement, Sams is responsible for the payment of the negative value of his capital account.  *See* Ex. A, Partnership Agreement at ¶ 2.12.  The negative balance of Sams's capital account currently stands at $92,758.  BFM is also signatory to a lease, which may result in additional charges to Sams's capital account.   In addition, BFM has an outstanding bank note in the amount of approximately $150,000, and additional outstanding payables of approximately $60,000 related to its winding up.  Under the Partnership Agreement, Sams is responsible for these debts in proportion to his share in the partnership. *Id.*

10.    Plaintiffs have repeatedly attempted to contact Sams regarding payment of his capital account and winding up of BFM.  However, Sams has not honored his obligations, nor

has he responded to attempts by the Plaintiffs to contact him regarding payment of his partnership debts.

11.     All conditions precedent to Plaintiffs' right to recover in this action have been performed, have occurred, or have otherwise been satisfied.

## VI.  CAUSES OF ACTION

### A.  Breach of Contract

12.     All prior paragraphs are incorporated by reference.  Hughes and Hamelink had a legally binding agreement with Sams.  Hughes and Hamelink performed their obligations under the Partnership Agreement.  Defendant has breached the agreement by failing and refusing to pay the negative value of his capital account, including the current $92,758.00 negative balance and his share of other partnership losses, as required by the terms of the Partnership Agreement. Therefore, Hughes and Hamelink seek damages relating to, and stemming from, Sams' breach of the Partnership Agreement, including without limitation, attorneys' fees.

13.     Due to Defendant's actions, Plaintiffs have been forced to retain the undersigned counsel to enforce their rights under the Partnership Agreement.  Accordingly, Plaintiffs seek to recover their attorneys' fees and costs of court from Defendant in connection with this lawsuit pursuant to Texas Civil Practice and Remedies Code § 38.001.

## VII. PRAYER

14.     Plaintiffs respectfully request that after a full trial on the merits before a jury of their peers, this Court enter a final judgment against Defendant as follows:

       a.      Actual damages;

       b.      pre- and post-judgment interest at the highest rate allowed by law;

       c.      reasonable attorneys' fees and expenses as allowed by law;

4

d.    costs of court; and

e.    such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

**GIBBS & BRUNS, L.L.P.**

By: _____
      Brandon T. Allen
      TBA No. 24009353
      Michael R. Absmeier
      TBA No. 24050195
      1100 Louisiana, Suite 5300
      Houston, Texas 77002
      Telephone: (713) 650-8805
      Telecopier: (713) 750-0903
      **ATTORNEYS FOR PLAINTIFFS**

5

*Limited Partner ?*

# BFM PARTNERSHIP AGREEMENT

This Partnership Agreement is made on ⟨JANUARY 28⟩, 1999, between E. BEN WHITTLE of Harris County, Texas, JOE H. SAMS of Harris County, Texas, and PAUL K. BEEBEE, BRIAN M. HAMELINK, and CHRIS W. HUGHES, all of Mecklenburg County, North Carolina, each referred to in this Agreement as "Partner." The Partners voluntarily associate themselves together as general partners on the terms and conditions set forth in this Partnership Agreement and the Texas Revised Partnership Act.

## ARTICLE 1
## NATURE OF PARTNERSHIP

? ⟨Type of Business⟩

1.01.   The Partnership shall engage in the printing business and any other businesses agreed on by the Partners.

? ⟨Name of Partnership⟩

1.02.   The name of the Partnership shall be BFM Partnership.

### Term of Partnership

1.03.   The Partnership shall commence on the closing of the sale of the sole proprietorship known as "Business Forms Management" owned by ROBERT D. COFFMAN (hereinafter "BFM Proprietorship") and being sold to the Partners of this Partnership and shall continue until dissolved by a majority vote of the Partners, unless sooner terminated as provided in this Agreement.

### Place of Business

1.04.   The Partnership's principal place of business shall be at 3813 Law St Houston, Harris County, Texas 77005, or at any other place or places as may be agreed on by the Partners.

## ARTICLE 2
## FINANCIAL MATTERS

### Initial Capital

2.01.   The total initial capital of the Partnership shall be the sum of:

(a) the loans (including application fees and all other costs associated with acquisition of the loans) obtained by the Partners to finance the purchase of the BFM Proprietorship;

(b) the closing and out-of-pocket costs to purchase the BFM Proprietorship; and

(c) the organizational costs of this Partnership.

Each Partner's contribution shall be considered to be an equal proportion of the total initial capitalization of the Partnership. However, any out-of-pocket costs or out-of-pocket expenditures

---


EXHIBIT
A

made or incurred by any of the individual Partners which make up a part of the initial capital of the Partnership shall be considered loans to the Partnership and shall be reimbursed to the respective individual Partner(s) as soon as is reasonably practical, appropriate, and prudent and such reimbursement shall not be considered compensation to the Partner, a distribution of income to the Partner, or a withdrawal of contributed capital by the Partner.

### Additional Contributions to Capital

2.02.   No Partner shall be required to make additional contributions to the capital of this Partnership. No Partner shall be allowed to make a voluntary contribution to capital without the written consent of all other Partners.

### Withdrawal of Capital

2.03.   No portion of the Partnership capital may be withdrawn at any time without the express written consent of all Partners.

### Interest on Capital

2.04.   No Partner shall be entitled to interest on contributions to the capital of the Partnership.

### Loans to Partnership

2.05.   No Partner may loan or advance money to the Partnership without the written consent of a majority of the other Partners. Any loan by a Partner to the Partnership shall be separately entered in the Partnership books as a loan to the Partnership, shall bear interest at a rate agreed on by the lending Partner and a majority of the other Partners, and shall be evidenced by a promissory note delivered to the lending Partner and executed in the name of the Partnership by a majority of the other Partners.

### Partnership Books

2.06.   Complete and accurate accounts of all Partnership transactions shall be kept in the Partnership books. Each Partner shall enter in the Partnership books an accurate account of all transactions carried out by the Partner on behalf of the Partnership.

### Inspection of Books

2.07.   The books of account and other Partnership records shall, at all times, be kept in the Partnership's principal place of business. Each Partner shall, at all times, have access to, and may inspect and copy, any Partnership books and records.

### Method of Accounting

2.08.   The Partnership books of account shall be kept on a cash basis.

### Fiscal Year

2.09.   The fiscal year of the Partnership shall end on the 31st day of December of each year.

### Accountings

2.10. As soon after the close of each fiscal year as is reasonable, a full and accurate inventory and accounting shall be made of the Partnership affairs as of the close of the fiscal year. In making the accounting, the net profit or net loss sustained by the Partnership during the fiscal year shall be ascertained and credited or debited, as the case may be, in the Partnership books of account, to the respective Partners in the proportions specified in Paragraph 2.12 of this Agreement.

### Definition of Profits and Losses

2.11. The terms "net profits" and "net losses" as used in this Agreement mean the net profits and net losses of the Partnership as determined by generally accepted accounting principles for each fiscal year.

### Profits and Losses

2.12. The net profits or net losses of the Partnership shall be credited or charged, as the case may be, to the Partners in equal proportions.

### Capital Accounts

2.13. Each Partner shall maintain a separate capital account. An individual Partner's capital account shall consist of the following:

(a) That Partner's initial contribution to the Partnership capital under Paragraph 2.01 of this Agreement;

(b) That Partner's additional contributions to Partnership capital under Paragraph 2.02 of this Agreement; and

(c) Any amounts transferred from the Partner's income account to the capital account of that Partner under Paragraph 2.14 of this Agreement.

### Income Accounts

2.14. A separate income account shall be maintained for each Partner. At the end of each fiscal year each Partner's share of the net profits or net losses of the Partnership shall be credited or debited to and withdrawals during the fiscal year deducted from that Partner's income account. After the amounts have been credited to or debited and deducted from a Partner's income account, any balance or deficit remaining in the account shall be transferred to or charged against that Partner's capital account.

### Bank Accounts

2.15. All Partnership funds shall be deposited in accounts in the name of the Partnership at such bank or banks as may be selected by a majority vote of all Partners. All withdrawals from any such account or accounts shall be made only by check or other written instrument signed by a Partner or another individual authorized by a majority of the Partners.

## ARTICLE 3
## RIGHTS AND DUTIES OF PARTNERS

### Salaries of E. Ben Whittle and Joe Sams

3.01.   E. BEN WHITTLE and JOE H. SAMS shall be entitled to an annual salary of $60,000.00 each, payable monthly. These salaries shall be paid to these partners in addition to any income they may receive as Partners of the Partnership. For their salaries, E. Ben Whittle and Joe Sams are to manage the day-to-day operations of the BFM printing business in Houston, Texas. Vacation and Sick leave and other compensation and benefits to be paid or provided to them shall be determined in writing by a majority of the Partners.

### Draws

3.02.   Each Partner shall be entitled to withdraw from the Partnership funds in the sums and at the times specifically agreed upon in writing by a majority of the Partners but no less than once per fiscal year. Each withdrawal by a Partner shall be charged against that Partner's share of the Partnership net profits for the fiscal year in which made. If the total withdrawals by any Partner during any such fiscal year exceeds that Partner's share of the net profits for the year, the Partner shall be entitled to no further withdrawals until the deficiency has been repaid to the Partnership. The limitation on the amount of withdrawals contained in this Paragraph may be increased or decreased at any time by unanimous consent of the Partners.

### Management

3.03.   E. BEN WHITTLE and JOE H. SAMS are designated as the Managing Partners of the Partnership and E. BEN WHITTLE is designated as the Tax Matters Partner (TMP) with regard to federal, state, and local tax matters and the Internal Revenue Service. Any differences arising among the Partners shall be decided by a majority vote of the Partners, each Partner having one vote. No action in contravention of these Articles, however, may be taken without the consent in writing of all the Partners.

### Power to Incur Liabilities

3.04.   With the approval in writing of at least one (1) Managing Partner, each Partner shall have authority to bind the Partnership in making contracts and incurring obligations in the Partnership name and on its credit in the ordinary course of the Partnership business. No Partner, however, shall incur any obligation in the Partnership name or on its credit exceeding the sum of $7,500.00 without the written consent of a majority of the Partners. Any Partner who incurs any obligation in the name and on the credit of the Partnership in violation of this provision shall be individually liable to the other Partners for the entire amount of the obligation incurred. The $7,500.00 limitation on the amount of an obligation that may be incurred by a Partner may be increased or decreased at any time by agreement of all Partners.

### Reimbursement of Expenses

3.05.   The Partnership shall indemnify all Partners for payments made and personal liabilities reasonably incurred by them in the ordinary and proper scope of the Partnership business or for the preservation of the Partnership business or property which are not in contravention of these Articles.

### Prohibited Acts

3.06.   No Partner may, without the consent of all other Partners:

(a) Loan any Partnership funds;

(b) Extend Partnership credit to any person to whom a Partner has notified the Partnership not to extend credit;

(c) Incur any obligations in the name or on the credit of the Partnership, except in the ordinary course of the Partnership business as provided in these Articles; and

(d) On behalf of the Partnership become bail, guarantor, surety, or indorser for any other person.

Any loss sustained by the Partnership because of the breach of this Paragraph by any Partner shall be deducted from the Partner's share of the Partnership net profits, or if the net profits for the fiscal year in which the breach occurred be insufficient, from the Partner's capital interest in the Partnership.

### Personal Debts

3.07.   All Partners shall discharge their personal obligations as they become due and protect the other Partners and the Partnership from all costs, claims, and demands in relation to such personal obligations.

### Assignment of Interest

3.08.   Except as specifically provided in this Agreement, no Partner, legal representative of a Partner, or successor-in-interest of a Partner shall sell, assign, mortgage, hypothecate, or encumber any interest in the Partnership.

### Inventions

3.09.   Any inventions, whether patentable or not, developed or invented by any Partner during the term of this Partnership, solely or jointly with others, that are made with the Partnership's equipment, supplies, or facilities, or that relate to the business of the Partnership, shall be Partnership property.

### ARTICLE 4
### TERMINATION OF PARTNERSHIP

### Expulsion of Partner

4.01.   A Partner may be expelled by unanimous vote of all other Partners. The remaining Partners shall buy-out and the expelled Partner shall be entitled to receive the value of that

expelled Partner's Partnership interest. The value of the expelled Partner's Partnership interest shall be determined in accordance with Paragraph 4.05 of this Agreement. However, the value of the interest as determined in accordance with Paragraph 4.05 of this Agreement shall be reduced by the amount of any damages sustained by the remaining Partners or the Partnership as a result of or relating to a breach of this Agreement by the expelled Partner or as of a result of or relating to any other conduct of the expelled partner.

### Bankruptcy

4.02.   If a Partner files for bankruptcy protection or a bankruptcy petition is filed against a Partner in a United States Bankruptcy Court, the remaining Partners may, by service of a written notice stating the effective date of the notice on both the Partner and on the trustee in bankruptcy of the Partner, terminate the interest in the Partnership of any Partner who has been adjudged a bankrupt pursuant to a petition in bankruptcy filed by or against that Partner under the Bankruptcy Act of the United States.

### Withdrawal of a Partner

4.03.   Any Partner may voluntarily withdraw from the Partnership by giving all other Partners at least thirty (30) days notice of intention to do so. The value of the Partnership interest of a withdrawing partner shall be calculated and determined in accordance with the provisions of Paragraph 4.05 below.

### Option to Purchase Terminated Interest

4.04.   On the occurrence of a Partner's death, or of any events stated in Paragraphs 4.02 or 4.03 of this Agreement, the remaining Partners shall have an option to purchase the interest of the deceased, bankrupt, or withdrawing Partner in the Partnership. After exercising the option, the Partner, or the person/entity legally entitled to receive such payment, shall be paid the value of that Partner's interest which shall be determined by and calculated in accordance with the provisions of Paragraph 4.05 of this Agreement. The method of payment of the value of that outgoing Partner's interest shall be in accordance with the provisions of Paragraph 4.06 below. The remaining Partners shall give notice of their exercise of the option in the following manner:

(a) On the death of a Partner, by serving written notice of their exercise of this option on the personal representative of the deceased Partner within ninety (90) days after the appointment and qualification of the personal representative.

(b) On the voluntary withdrawal of a Partner, by serving written notice of the exercise of this option on the withdrawing Partner within ninety (90) days after service on the remaining Partners of the notice of withdrawal provided in Paragraph 4.03 of this Agreement.

(c) On the occurrence of the events specified in Paragraph 4.02 of this Agreement, by serving written notice of the exercise of this option on both the terminated Partner and that Partner's trustee in bankruptcy, at the same time the notice of termination of the terminated Partner's Partnership interest is served on those persons.

The failure of the remaining Partners to exercise the option to purchase the interest of the outgoing Partner within the timeframes provided in subparagraphs (a), (b), or (c) of this paragraph shall not constitute a waiver of the prohibitions set forth in Paragraph 3.08 above.

### Calculation of Value of Partnership Interest

4.05.   On exercise of the option described in Paragraph 4.04 of this Agreement to purchase an outgoing Partner's Partnership interest, or with regard to a buy-out of an expelled Partner's interest as provided in Paragraph 4.01 above, the remaining Partners shall pay, in the manner selected by them as specified in Paragraph 4.06 of this Agreement, the value of the outgoing Partner's interest in the Partnership. The value of the outgoing Partner's interest in the Partnership is calculated as follows:

(a)      The result of one (1) divided by the number of Partners of the Partnership immediately prior to the effective date of the expulsion, bankruptcy, voluntary withdrawal, death, or any other event of termination of interest in the Partnership; *multiplied by*

(b)      Fifty percent (50%) of the annual Net Sales of the BFM Partnership printing business. The annual Net Sales of the BFM Partnership printing business shall be calculated by multiplying the monthly average of the previous twelve (12) months' Net Sales of the printing business (beginning with the month preceding the month of the effective date of the termination of the Partner's interest in the Partnership) times twelve (12). In particular, Net Sales shall be calc ated and determined in accordance with Generally Accepted Accounting Principles.

### Payment of Value of Partnership Interest

4.06.   On exercise of the option described in Paragraph 4.04 of this Agreement to purchase an outgoing Partner's Partnership interest, or with regard to a buy-out of an expelled Partner's interest as provided in Paragraph 4.01 above, the purchasing/buying Partners shall pay to the person/entity legally entitled to payment, the value of the Partnership interest as calculated and determined in Paragraph 4.05 of this Agreement in one of the following ways as selected in the discretion of majority of the purchasing/buying Partners:

(a) The total value of the interest in cash within ninety (90) days after the receipt of the determination of the value of the interest provided for in Paragraph 4.05; or

(b) One-half of the value of the interest in cash within ninety (90) days after the receipt of the determination of the value of the interest provided for in Paragraph 4.05, and the balance in six (6) equal monthly installments commencing not later than one hundred and twenty (120) days after receipt of the determination of the value of the Partnership interest. Each monthly installment shall be applied first to interest at the rate of seven percent (7%) per annum on the then remaining unpaid principal balance of the purchase price with the interest accruing beginning ninety (90) days from the date the determination of valuation was received by the remaining Partners, and then to the reduction of principal. The balance may be prepaid at anytime without penalty.

### Purchase by Less Than All Remaining Partners

4.07.   If any remaining Partner is unable or unwilling to exercise the option contained in Paragraph 4.04 of this Agreement to participate in the purchase of an outgoing Partner's interest, the option may be exercised and the interest purchased by the other remaining Partners. No remaining Partner shall be denied a right to participate in any such purchase if that Partner delivers to all other Partners a written declaration of intent to participate. This written declaration shall be delivered before the determination of valuation is delivered.

### Death of Partner

4.08.   On the event of a Partner's death, the remaining Partners may continue the business of the Partnership until ninety (90) days after the appointment and qualification of a personal representative for the deceased Partner; provided, however, neither the personal representative nor the estate of the deceased Partner shall be liable for any obligations of the Partnership incurred in the ninety (90) day period in excess of the amount includible in the estate of the deceased  Partner already involved or invested in the Partnership on the date of the  deceased Partner's death. The estate shall be entitled to interest for the use of deceased's interest in the Partnership during that period at the rate of seven percent (7%) per annum on the value of the interest as determined in accordance with paragraph 4.05. For purposes of this paragraph and paragraph 4.05 above, the date of death is the effective date of the termination of the deceased Partner's interest in the Partnership.

### Assumption of Partnership Obligations

4.09.   On any purchase and sale of a Partnership interest under this Agreement, the remaining Partners shall assume all Partnership obligations and shall protect and indemnify the withdrawing or terminated Partner. the personal representative and estate of a deceased Partner, and the property of any withdrawing, deceased, or terminated Partner from liability for any such obligations.

### Publication of Notice

4.10.   On any purchase and sale of a Partnership interest under this Agreement, or on the expulsion of a Partner pursuant to Paragraph 4.01 of this Agreement, the remaining Partners shall, at their own costs and expenses, as soon as reasonably practicable after giving notice of expulsion or of exercise of their option to purchase the departing Partner's interest, prepare, publish, file, and serve all notices required by law to protect the expelled, withdrawing, or terminated Partner and the personal representative and estate of a deceased, insane, or incompetent Partner from liability for future obligations of the Partnership business.

### Winding Up Without Sale

4.11.   On the occurrence of an event requiring winding up of the Partnership, other than as provided in Paragraphs 4.01 through 4.10 of this Agreement, the affairs of the Partnership shall be wound up, the assets liquidated, the debts paid, and the remaining funds divided among the

Partners according to their net worths in the Partnership business at the time of such event.

## ARTICLE 5
## MISCELLANEOUS

### Notices

5.01.   All notices between the Partners shall be in writing and shall be deemed duly served when personally delivered to a Partner, or, instead of personal service, when deposited in the United States mail, certified, first-class postage prepaid, addressed to the Partner at the address given below each Partner's signature made below or to another place specified in a notice given pursuant to this Paragraph by the Partner being served as the address for service of notice on that Partner.

### Consents and Agreements

5.02.   Any and all consents and agreements provided for or permitted by this Agreement shall be in writing. Signed copies of all consents and agreements shall be filed and kept with the books of the Partnership.

### Choice of Applicable Law

5.03.   This Agreement shall be interpreted, construed, and enforced in accordance with the laws of the state of Texas in effect as of the effective date of this Agreement or the date of the last amendment to this Agreement, whichever is later.

### Sole Agreement

5.04.   This instrument contains the sole agreement of the parties in connection with their Partnership relationship and correctly sets forth the rights, duties, and obligations of each to the others as of its date Any prior agreements, promises, negotiations, or representations not expressly set forth in this Agreement are of no force and effect.

Executed by the following partners on the date and at the location(s) stated below:

E. BEN WHITTLE                                  Date Signed   1/28/99
713 East 17th
Houston, Harris County, Texas  77008

JOE H. SAMS                                     Date Signed   1/08/99
214 Kirkwood Court
Sugarland, Ft. Bend County, Texas 77478

*Paul K Beebee*  *1/28/99*

PAUL K. BEEBEE                          Date Signed
10009 Plum Creek Lane, Apt. L
Charlotte, Mecklenburg County, North Carolina 28210


*Brian M Hamelink*  *1/28/99*

BRIAN M HAMELINK                        Date Signed
10009 Plum Creek Lane, Apt. L
Charlotte, Mecklenburg County, North Carolina 28210


*Chris W Hughes*  *1/28/99*

CHRIS W. HUGHES                         Date Signed
10009 Plum Creek Lane, Apt. L
Charlotte, Mecklenburg County, North Carolina 28210


BFM Partnership Agreement

There are no orders signed yet on this case.

Thanks

EXHIBIT

3

# 2007-01460

FILED: _____ 01/10/2007

HUGHES, CHRISTOPHER
                    PLAINTIFFS
ABSMEIER, MICHAEL ROBERT

                                        Attorney _____

## NATURE OF ACTION

BREACH OF CONTRACT

                        VS.

SAMS, JOSEPH H
        DEFENDANTS

                        Attorney _____

SURETIES ON COST BOND:

Jury Fee Paid By:
24050195
ABSMEIER, MICHAEL ROB

## SETTINGS

GENERAL ORDER OF THE COURT

## LIST OF COUNSEL OF RECORD

| LAWYER FOR PLAINTIFFS | LAWYER FOR DEFENDANT |
|---|---|
| Name of Parties:<br>Christopher Hughes and<br>Brian Hamelink | Name of Party:<br>Joseph H. Sams |
| Atty. Name:<br>Brandon T. Allen and<br>Michael R. Absmeier | Atty Name:<br>Michael D. Schwartz and<br>Joseph J. Walsh |
| Address:<br>Gibbs & Burns, L.L.P.<br>1100 Louisiana, Suite 5300<br>Houston, TX 77002 | Address:<br>Michael D. Schwartz, P.A.<br>455 Pond Promenade, Suite 210<br>P.O. Box 219<br>Chanhassen, MN 55317-0219 |
| Phone Number:<br>(713) 650-8805 | Phone Number:<br>(952) 937-5655 |
| Facsimile Number:<br>(713) 750-0903 | Facsimile Number:<br>(952) 937-5855 |
| TX Atty. ID No.:<br>Brandon T. Allen #24009353<br>Michael R. Absmeier #24050195 | MN Atty. ID No.:<br>Michael D. Schwartz #98164<br>Joseph J. Walsh #035272X |

MICHAEL D. SCHWARTZ, P.A.

Dated: February **16**, 2007

By: _____
       Michael D. Schwartz (#98164)
       Joseph J. Walsh (#035272X)
       455 Pond Promenade, Suite 210
       P.O. Box 219
       Chanhassen, MN 55317-0219
       Telephone:  (952) 937-5655
       Facsimile:  (952) 937-5855
       Attorneys for the Defendant

EXHIBIT
5